IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**NELLIE ARNOLD**                                                                                                      **PLAINTIFF**

VS.                                           NO.   4:20-CV-729-DPM

**DEPUTY MARANDA TURNER, Individually and
in her Official Capacity; DEPUTY BRENT BITTLE,
Individually and in his Official Capacity; SALINE COUNTY
SHERIFF'S OFFICE; SHERIFF RODNEY WRIGHT,
Individually and in his Official Capacity; and
SALINE COUNTY, ARKANSAS**                                                       **DEFENDANTS**

## Brief in Support of Motion for Summary Judgment

Come now the Saline County Defendants—Deputy Maranda Turner, Corporal Brent Bittle, and Sheriff Rodney Wright, individually and in their official capacities, the Saline County Sheriff's Office, and Saline County, Arkansas—and offer the following *Brief* in support of their summary-judgment motion under Fed. R. Civ. P. 56 and Local Rules 7.2 and 56.1.

### I.        Introduction

Plaintiff Nellie Arnold contends in her verified complaint that on July 3, 2017, when deputies with the Saline County Sheriff's Office were dispatched to her residence in response to a disturbance call, she was placed under arrest unlawfully by Deputy Maranda Turner (at the direction of Defendant Brent Bittle), then she was unlawfully slammed to the ground by Deputy Turner, causing a compound fracture of her wrist, and then Defendants Turner and Bittle failed to secure medical care for her broken wrist for 45 minutes until an ambulance arrived. *See* ECF No. 1 at 4-5, ¶¶ 14-22; Exhibit E, Deposition of Nellie Arnold (excerpts).

The facts and evidence in this case are outlined in the Saline County Defendants' separately-filed statement of facts and exhibits.    In sum, deputies with the Saline County Sheriff's Office were dispatched to Ms. Arnold's residence several times on July 3, 2017, in response to

1

calls from both Ms. Arnold and Lowell Best, who lived with Ms. Arnold. Ms. Arnold and Mr. Best were engaged in argument that included, according to Ms. Arnold's own testimony, slapping each other in the face and threatening each other, and calling the cops on each other. In the second-to-last dispatch to the residence, Deputy Turner and Corporal Bittle warned both Ms. Arnold and Mr. Best that if they were called to the residence again, both Ms. Arnold and Mr. Best would be arrested.

When Turner and Bittle were again dispatched to the residence about 20 minutes later, Turner attempted to place Ms. Arnold under arrest, and Ms. Arnold contends that Turner used unconstitutional force by slamming her to the ground, while Ms. Turner contends that Ms. Arnold lost her balance and fell while resisting arrest. Ms. Arnold suffered a compound fracture of her wrist. Turner and Bittle did not have first aid supplies and could not splint Ms. Arnold's wrist, but Bittle immediately requested emergency medical assistance for Ms. Arnold. Within minutes, officers with the Shannon Hills Police Department arrived and began to splint Ms. Arnold's wrist. Ten minutes after the emergency call, three firefighters arrived and found officers with the Shannon Hills Police Department already on scene, providing medical assistance to Ms. Arnold. The firefighters also assisted until an ambulance arrived and took Ms. Arnold to the hospital.

Ms. Arnold alleges that a bevy of her constitutional rights were violated under the 1st, 4th, 5th, and 14th Amendments to the U.S. Constitution and provisions of the Arkansas Constitution.[1]

---

[1] Arkansas courts look to federal decisions as persuasive authority when evaluating claims under the Arkansas Constitution and Arkansas Civil Rights Act. *See* Ark. Code Ann. § 16-123-105(c) ("When construing this section, a court may look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983[.]"); *Island v. Buena Vista Resort*, 352 Ark. 548, 556-57, 103 S.W.3d 671 (2003) ("We have explained that our state courts may look to federal decisions for persuasive authority when considering claims under the Arkansas Civil Rights Act.") (citing *Faulkner v. Ark. Children's Hospital*, 347 Ark. 941, 69 S.W.3d 393 (2002); *Rudd v. Pulaski County Special Sch. Dist.*, 341 Ark. 794, 20 S.W.3d 310 (2000); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000)).

In her sworn and verified complaint, Ms. Arnold brings the following claims: (1) "violation of the Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under Article 2 of the Constitution of the State of Arkansas and Arkansas Civil Rights Act"—against all Defendants (ECF No. 1 at 7-12, ¶¶ 29-54); (2) "Section 1983 liability for failure to train and failure to supervise"—against Saline County Sheriff Rodney Wright, Saline County, and the Saline County Sheriff's Office (*id.* at 12-14, ¶¶ 55-66); (3) negligence—against all Defendants (*id.* at 14-18, ¶¶ 67-76); and (4) civil action by a crime victim—against Deputy Turner (*id.* at 18-19, ¶¶ 77-81).

Construing the complaint liberally as required, Ms. Arnold appears to bring the following claims: (1) unconstitutional seizure/arrest; (2) unconstitutional excessive force; (3) unconstitutional denial of medical care; (4) negligence; (5) unconstitutional failure to train/supervise; (6) official-capacity policy/custom liability for constitutional violations; and (7) civil action by crime victim (state law). Material facts are disputed regarding the excessive force claim against Defendant Turner, so summary judgment is not sought on that claim in the instant motion. Regarding all other claims and Defendants, there are no disputed issues of material fact, and the Saline County Defendants are entitled to judgment as a matter of law. Turner had probable cause to (attempt to) arrest Ms. Arnold, and neither Turner nor Bittle was deliberately indifferent to Ms. Arnold's medical needs regarding her injury. The negligence claim fails as a matter of both state and federal law. There is no evidence to support a failure to train/supervise claim, nor is there evidence of an unconstitutional policy or custom. And the Court should decline to exercise supplemental jurisdiction over the state-law cause of action for felony crime victims. The Court should: (i) dismiss the complaint with prejudice as to Defendants Bittle and Wright in their individual and official capacities, Defendant Saline County, and Defendant Saline County

Sheriff's Office; (ii) dismiss the complaint with prejudice as to Defendant Turner in her official capacity; and (iii) dismiss with prejudice all claims against Defendant Turner in her individual capacity except for the excessive-force claim.

## II.    Summary Judgment Standard

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the nonmovant, shows that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Tusing v. Des Moines Independent Community Sch. Dist.*, 639 F.3d 507, 514 (8th Cir. 2011) (quoting *Wingate v. Gage Cty. Sch. Dist. No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Importantly, Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson*, 477 U.S. at 247. By its very terms, this standard provides that the mere existence of *some alleged* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id.* at 247-48. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248.

In the face of a properly supported motion for summary judgment, the nonmoving party

cannot rest on allegations to get to a jury without any "significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290 (1968)). In other words, a party opposing summary judgment must present sufficient probative evidence that would permit a fact finder to rule in his favor based on more than "mere speculation, conjecture, or fantasy." *Kneibert v. Thomson Newspapers*, 129 F.3d 444, 455 (8th Cir. 1997) (quoting *Wilson v. International Bus. Machines Corp.*, 62 F.3d 237, 241 (8th Cir. 1995).

### III. Argument

A. <u>The unlawful seizure/arrest claim fails as a matter of law because there was probable cause for Ms. Arnold's arrest</u>.

The Fourth Amendment protects persons against unreasonable searches and seizures of their "persons, houses, papers, and effects." U.S. Const. amend. IV. The Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). A law enforcement officer has probable cause "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id*. at 523 (quoting *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)).

When an officer personally witnesses a crime—felony or misdemeanor—the officer has probable cause to arrest the offender as a matter of law. *See Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). "The cases construing the Fourth Amendment thus reflect the ancient common-law rule

that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest." *U.S. v. Watson*, 423 U.S. 411, 418 (1976).

In *Pierson v. Ray*, 386 U.S. 547 (1967), several plaintiffs were arrested by local police officers and charged with violating a Mississippi law that prohibited anyone from congregating with others in a public place under circumstances such that a breach of the peace may be occasioned thereby, and refusing to move on when ordered to do so by a police officer. 386 U.S. at 548-49. The plaintiffs were not convicted, and brought a § 1983 action against the arresting officers seeking damages for false arrest and false imprisonment. *Id*. at 550. The federal district court noted that the statute under which the plaintiffs had been arrested was declared unconstitutional in a separate case, but held that the police officers would not be liable for the common law tort claim if they had probable cause to believe that the statute had been violated. *Id*. The U.S. Supreme Court granted *certiorari* to consider whether the officers were entitled to assert the defense of probable cause to a claim for unconstitutional arrest. *Id*. at 551-52. In its discussion of this issue, the Court noted "the prevailing view in this country [that] a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Id*. at 557. The Court then held that just as probable cause is a defense against state-law claims for false arrest / imprisonment, probable cause is a defense to actions under 42 U.S.C. § 1983. *Id*.

Ms. Arnold testified under oath in her deposition that she slapped Lowell Best in the face, and he slapped her in the face, on July 3, 2017, in front of law enforcement officers. This testimony alone is sufficient to establish probable cause for their arrests. The evidence also indicates that Ms. Arnold threatened violence against Mr. Best in front of officers (repeatedly), which is also sufficient alone to establish probable cause for her arrest. Moreover, Turner and Bittle warned both Ms. Arnold and Mr.

6

Best that they would be arrested if they called the cops to their house again on the same day, and Turner and Bittle were again dispatched minutes later. Notably, the Saline County Defendants concede that material facts are in dispute regarding Ms. Arnold's separate and distinct excessive-force claim against Turner. But Ms. Arnold's claim for unlawful seizure/arrest fails as a matter of law under the undisputed material facts and should be dismissed with prejudice.

      B.      <u>The excessive-force claim against Defendants Bittle and Wright fails for lack of personal involvement in the alleged constitutional violation</u>.

Individual liability in cases brought under 42 U.S.C. § 1983 must be based on personal involvement in the constitutional violation—the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *See also Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (explaining § 1983 liability requires causal link to, and direct responsibility for, alleged deprivation of rights). In this case, no evidence supports an excessive-force claim against Defendant Bittle or Defendant Wright. Sheriff Wright was not at the scene, and Defendant Bittle cannot be held liable for excessive force merely because he was present at the scene where the plaintiff alleges excessive force by another officer. Bittle ordered Turner to arrest Ms. Arnold, but he did not order Turner to use excessive force. The excessive-force claim against Defendants Wright and Bittle fails as a matter of law and should be dismissed with prejudice.

      C.      <u>The denial-of-medical-care claim against Defendants Turner and Bittle fails because Turner and Bittle were not deliberately indifferent to Ms. Arnold's serious medical needs</u>.

Law enforcement officers' "actions may rise to the level of a constitutional violation if they intentionally deny or delay access to medical care." *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993) (citing *Estelle v. Gamble*, 429 U.S. at 104-105). To establish that a denial of medical care rises to the level of a constitutional violation, a plaintiff must show that

7

a defendant acted with deliberate indifference. *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 698 (8th Cir. 2016). "Deliberate indifference has both an objective and a subjective component." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Id.* "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.* "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996).

"In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn*, 557 F.3d at 908 (internal quotation omitted). This onerous standard requires a showing "more than negligence, more even than gross negligence," *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008), but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate," *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011). Circumstantial evidence may be used to establish the subjective mental state, and "a factfinder may determine that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious." *Vaughn*, 557 F.3d at 908–09 (alteration in original) (internal quotation omitted). "But '[i]t is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known' about the risk." *Krout v. Goemmer,* 583 F.3d 557, 567 (8th Cir. 2009) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 n. 8 (1994)). Even acting unreasonably in

8

response to a known risk is not sufficient to prove deliberate indifference. *Id.* However, if a response to a known risk is obviously inadequate, this may lead to an inference that the officer "recognized the inappropriateness of his conduct." *Id.*

Ms. Arnold contends in her complaint and testimony that she laid on the ground for 45 minutes with a broken wrist, and no medical assistance was provided to her by Turner or Bittle or anyone else. But Ms. Arnold also testified that she doesn't remember what happened between the time her wrist was broken and the time she was taken to the hospital by ambulance. The evidence shows that when Ms. Arnold was injured, Bittle immediately summoned emergency medical assistance. The Shannon Hills Police Department dispatched officers to the scene, who arrived within minutes of the call for emergency medical assistance and began providing first aid using their trauma bag. Three firefighters arrived approximately 10 minutes after Bittle's emergency call, and assisted Shannon Hills. Then the ambulance arrived and took over, and Ms. Arnold was taken to a hospital. There is no evidence that Turner or Bittle (or anyone else) were deliberately indifferent to Ms. Arnold's medical needs regarding her wrist injury. The denial-of-medical care claim should be dismissed with prejudice.

D.     Ms. Arnold's negligence claim fails as a matter of law.

Saline County and its employees, including Defendants Wright, Bittle, and Turner, are immune from negligence claims under Arkansas law. *See* Ark. Code Ann. § 21-9-301. Negligence cannot form the basis of a 42 U.S.C. § 1983 claim as a matter of law. *See Daniels v. Williams*, 474 U.S. 327, 336 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Ms. Arnold's negligence claim fails as a matter of law as to all Saline County Defendants and should be dismissed with prejudice.

E. The claim against Defendant Wright fails because there is no evidence supporting the requisite elements of a claim for failure to train/supervise.

Individual liability in cases brought under 42 U.S.C. § 1983 must be based on personal involvement in the constitutional violation—the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *See also Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (explaining § 1983 liability requires causal link to, and direct responsibility for, alleged deprivation of rights). "[P]rison supervisors . . . cannot be held liable under § 1983 on a theory of respondeat superior." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). Supervisors only "incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Choate*, 7 F.3d at 1376. "For a supervisor to be held liable for the acts of a subordinate, something more must be shown than merely the existence of the supervisor-subordinate relationship." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (quoting *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir.1987)). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see." *Id.*

A supervisory defendant may be liable under 42 U.S.C. § 1983 if a prisoner's constitutional rights were violated because of a failure to properly train and/or supervise an officer. *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018). To prove such liability, there must be a factual showing that the supervisor: "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Ms. Arnold]." *Id.* (citations and internal quotation marks omitted).

10

There is no evidence supporting any of Ms. Arnold's conclusory allegations about training and supervision, and no evidence supporting any of the four elements that she must meet to establish a claim for failure to train/supervise. Sheriff Wright did not have personal involvement with Ms. Arnold on the relevant date. Summary judgment should be granted to Sheriff Wright, and the complaint against him should be dismissed with prejudice.

      F.      <u>The 42 U.S.C. § 1983 claims against Saline County Defendants Bittle and Wright in their individual capacities are also barred by qualified immunity</u>.

"The qualified immunity defense shields government officials from civil liability in circumstances where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lyles v. City of Barling*, 181 F.3d 914, 917 (8th Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Government actors are entitled to immunity from suit for damages unless their actions violated clearly established law of which a reasonable government official would have been aware. *Harlow*, 457 U.S. at 818.

"In determining an official's entitlement to immunity, the courts undertake a two-pronged analysis. First, the court must see if a deprivation of a constitutional magnitude has been alleged. If so, the court must determine if that right was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act." *Weiler v. Puckett*, 137 F.3d 1047, 1050 (8th Cir. 1998). In other words, a "law enforcement officer is entitled to qualified immunity from suit for actions that are objectively reasonable in light of clearly established law and the facts known by the officer at the time of his actions." *Lyles*, 181 F.3d at 917 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Because individual liability must be based on personal involvement in the constitutional violation by a defendant, where there is no personal involvement, the defendant is entitled to qualified immunity. *See Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805 (8th Cir. 2010) ("[T]he district

11

court was required to evaluate [each defendant's] conduct individually. Authorities not involved in the allegedly unconstitutional acts of their fellow public servants have not violated constitutional rights and are entitled to qualified immunity.").

Here, as explained above, the individual-capacity claims against Defendants Bittle and Wright fail on the merits. Defendants Bittle and Wright are therefore entitled to qualified immunity as a matter of law. *See Lunon v. Botsford*, 946 F.3d 425, 432 (8th Cir. 2019) ("each individual defendant is entitled to qualified immunity as a matter of law because [plaintiff] failed to show that he or she violated [plaintiff's] federal constitutional right[s]"). Defendant Turner asserts the defense of qualified immunity as she did in her answer, but recognizes that disputed issues of material fact may preclude summary judgment to Turner on the excessive-force claim. Summary judgment should be granted to Defendants Bittle and Wright because the claims against them are barred by qualified immunity under the undisputed facts.

G. The claims against the Saline County Defendants in their official capacities fail because there is no evidence of an unconstitutional policy or custom.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official-capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Ms. Arnold's official-capacity claims are treated as claims against the Defendants' employer—Saline County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). "[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish the County's liability under section 1983, Ms. Arnold "must show that a constitutional

violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Saline County's policies are constitutional, and Ms. Arnold does not appear to argue otherwise.

To establish a claim against Saline County for "custom" liability, Ms. Arnold must show: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the County's employees; (2) deliberate indifference to or tacit authorization of such conduct by the County's policymaking officials after notice to the policymaking officials of the misconduct; and (3) that the custom was the moving force behind the constitutional violation. *Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932–33 (8th Cir. 1991) (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990)). With respect to the first element, "a single deviation from a written, official policy does not prove a conflicting custom." *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Saline County's written policies are constitutional, and Ms. Arnold does not appear to contend otherwise at this stage. There is also no evidence supporting an unconstitutional custom. The official-capacity claims against Saline County Defendants Turner, Bittle, and Wright, fail as a matter of law. The official-capacity claims are substantively the same as claims against Saline County, so Saline County should likewise be dismissed as a Defendant. And the Saline County Sheriff's Office should also be dismissed because a Sheriff's Office is not an entity that can be sued separately. The Saline County Defendants in their official capacities, Saline County, and the Saline County Sheriff's Office, should be dismissed with prejudice.

      H.    <u>The Court should decline to exercise supplemental jurisdiction over Ms. Arnold's claim under the state law providing a civil cause of action to felony victims.</u>

Ark. Code Ann. § 16-118-107(a)(1) permits "any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law" to "file a civil action

to recover damages based on the conduct." *Id*. Ms. Arnold does not specify what felony has allegedly been committed against her in her. *See* ECF No. 1 at 18, ¶ 79 ("Deputy Turner's action of slamming Ms. Arnold to the ground and the injury Ms. Arnold sustained would constitute a felony under Arkansas law."). And Ms. Arnold testified in her deposition that she did not contact the prosecuting attorney to pursue a felony charge against Turner, which belies her asserted claim under the felony crime victims' statute. Without specification of what "felony" has been committed, it is impossible to analyze whether the elements of the alleged felony are met or can be met under the facts of the case. Given what is stated about the claim, the claim is arguably the same as, and subsumed by, Ms. Arnold's constitutional excessive-force claim. Under these circumstances, the Court should decline to exercise supplemental jurisdiction over the state-law claim at this time—or at least require Ms. Arnold to specify what felony she contends has been committed. *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed). If the claim is permitted to go forward against Defendant Turner, the Court should dismiss the claim with prejudice as to all other Defendants.

### IV.    Conclusion

For the reasons explained above, the Court should grant the Saline County Defendants' summary-judgment motion. The Court should: (i) dismiss the complaint with prejudice as to Defendants Bittle and Wright in their individual and official capacities, Defendant Saline County, and Defendant Saline County Sheriff's Office; (ii) dismiss the complaint with prejudice as to Defendant Turner in her official capacity; and (iii) dismiss with prejudice all claims against Defendant Turner in her individual capacity except for the excessive-force claim.

WHEREFORE, the Saline County Defendants pray that their summary-judgment motion is granted, and pray for any and all other just and proper relief to which they are entitled.

    Respectfully submitted,

    SALINE COUNTY, ARKANSAS; SALINE COUNTY SHERIFF'S OFFICE; SHERIFF RODNEY WRIGHT, in his Individual and Official Capacities; MARANDA TURNER, in her Individual and Official Capacities; and BRENT BITTLE, in his Individual and Official Capacities, *Defendants*.

By:    Colin R. Jorgensen, Ark. Bar No. 2004178
    Association of Arkansas Counties
    1415 W. Third Street
    Little Rock, Arkansas 72201
    Telephone (501) 372-7947
    Telefax (501) 372-0611
    email: CJorgensen@ARCounties.org

### Certificate of Service

I hereby certify that on April 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notification of the filing to CM/ECF participants.

/s/ Colin R. Jorgensen